**Thomas Francis GIBBONS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1243–89.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 25, 1991.

Larry Finstrom, Dallas, for appellant.

John Vance, Dist. Atty., Kathleen A. Walsh and John Douglas, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

CLINTON, Judge, dissenting to refusal of appellant's petition for discretionary review.

CLINTON, Judge.

Appellant was convicted of criminal trespass for exercising his constitutional rights to free speech and expression in a public way on property belonging to the First Baptist Church of Dallas; the judgment was affirmed by the Dallas Court of Appeals. *Gibbons v. State*, 775 S.W.2d 790 (Tex.App.—Dallas 1989).

A security officer employed by the church was the sole witness for the State. He agreed that "there is a kind of private street called San Jacinto Place." S.F. 12. San Jacinto Place, formerly a city street intersecting two others, had been "deeded" to the church, and was used on occasions by vehicular traffic related to weddings, funerals and other church programs. S.F. 14. See copy of State's Exhibit No. 1, attached hereto as Appendix 1.

"There is no church policy against people walking through the street, but they're not permitted to engage in any program. * * * * [T]he church has not authorized anyone to demonstrate or make a parade through there unless it's church oriented, church directed." S.F. 15–16. As to the grounds for arresting appellant on the oc-casion in question, the security officer testified:

Q. [W]as the church's complaint with the defendant that he was on the property, or was it that he was doing something else while on the property?

A. It was not in compliance with church policies.

Q. In what way?

A. In that he had the signs, making a protest near the services [inside the church].

Q. What was the defendant protesting?

A. I'm really not sure of that. He did mention something in the way of rights; he mentioned Jerry Fallwell S.F. 16.

Q. Was the defendant making any noises while he was doing this protesting?

A. He was making statements to the passerbys and people leaving the church services.

Q. Such as?

A. * * * * I observed him making comments to, in general, as he walked along in front of the sanctuary on Ervay Street. And the comments were directed at the people who, some of them were discussing it with him, they were responding to his comments.

Q. Comments concerning what subject?

A. Generally about rights and taxes, he mentioned taxes; I am not sure of the nature of the comment.

S.F. 21–22.[1]

The security officer conceded that during daytime hours, seven days a week, "there's no restraints on public access," "there's general access to the public walking from

---

1. A photograph depicting appellant at Ervay and San Jacinto Place, displaying a "banner" in each hand, was introduced as State's Exhibit 4; other photographs were also admitted. Alas, in our record on the page where each photograph should be is the notation "Retained by Court Reporter." On crossexamination the witness acknowledged that the photograph taken of appellant on Ervay near San Jacinto Place showed him in a place "he had the legal right to be." S.F. 26.

One of the photographs, State's Exhibit 2, shows signs posted at the east entrance from St. Paul to San Jacinto Place: "Church Parking Only. Private Drive. Do not Enter," and "Unauthorized vehicles will be towed away." S.F. 14. It is undisputed that appellant entered San Jacinto Place at the west entrance from Ervay into San Jacinto Place, where there are no such signs. S.F. 55, 32–33, 62–63.

Ervay through San Jacinto Place to St. Paul." S.F. 32. On Sunday, May 31, at 12:30 p.m., the day and time appellant was arrested, "it's safe to say there would be no restraint on a person walking through that area." S.F. 30–31.

The court of appeals concluded that, as to appellant, "the enforcement of the criminal trespass statute did not violate [his] right of expression under either the United States or Texas constitutions." *Gibbons v. State*, supra, at 794. Citing authoritative decisions of the Supreme Court to the effect that streets are "natural and proper places for the dissemination of information and opinion," and that such use of streets, from ancient times, has been "a part of the privileges, immunities, rights, and liberties of citizens," *Schneider v. State of New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Hague v. C.I.O.*, 307 U.S. 496, 515–516, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972), appellant contends that the decision of the court of appeals not only erroneously upholds abridgment of his right to free speech, but also extends application of the criminal trespass statute in violation of that right, thereby endangering free speech rights by every Texan desiring to exercise them.

Manifestly this cause presents important questions of federal and state constitutional law, such that this Court should address and resolve for the bench and bar, as well as for the citizens of this State.

Because the Court refuses to exercise its discretion to that end, I respectfully dissent.

McCORMICK, P.J., and BAIRD and MALONEY, JJ., join.

## APPENDIX I